**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:
TINY FROG, INC.,                                              Case No. 25-01081-5-JNC
                                                                                                       Chapter 11
    **Debtor**

**DEBTOR'S EMERGENCY MOTION FOR AUTHORIZATION**
**TO USE CASH COLLATERAL**

COMES NOW TINY FROG, INC. (the "Debtor"), by and through its undersigned counsel of record and pursuant to §§ 105(a), 363, and 506(c) of the Bankruptcy Code,[1] and moves the Court for authorization to use cash collateral upon the terms and conditions memorialized herein. In support hereof, the Debtor shows unto the Court as follows:

**INTRODUCTORY STATEMENT**
**Fed. R. Bankr. P. 4001(b)(1)(B)**

The Debtor is a corporation organized and existing under the laws of North Carolina. It operates seven (7) fast food restaurants under the name "Hwy 55 Burgers Shakes & Fries" with locations in Wake, Johnston, Harnett, Moore, and Lee Counties, North Carolina. The Debtor is a franchisee of The Little Mint, Inc., which is itself a debtor in that case pending in this District at Case No. 24-04510-5-JNC.

The Debtor currently anticipates a continuation of operations by way of this reorganization. The Debtor's only source of income is through its continued restaurant operations. In order to maintain existing operations, pay necessary salaries and wages, and maximize the return to creditors as a result of its reorganization, the Debtor will be required to incur certain expenses, including labor, supplies, insurance, utilities, maintenance, repair, and

---

[1] All statutory references, unless otherwise indicated herein, are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

other expenses associated with reorganizing a restaurant operation. A liquidation will not result in a meaningful return, if any, to holders of general unsecured claims.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

3. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on March 25, 2025 (the "Petition Date"), and currently operates as Debtor-in-Possession.

## FACTUAL BACKGROUND

4. Prior to the Petition Date filing, the Debtor was indebted to various creditors who possibly hold liens against the Debtor's cash, accounts, and revenue, including, but not limited to, the following (collectively, the "Secured Parties"):

| SECURED PARTY | PERFECTION | PERFECTION DATE | AMOUNT |
|---|---|---|---|
| The Bancorp Bank/SBA | UCC | 1/26/2018 | $61,011.22 |
| First Federal Bank | UCC (Knightdale) | 7/16/2018 | $904,283.36 |
| Business Expansion Funding | UCC | 4/8/2020 | $165,871.24 |
| Timepayment Corp | UCC | 06/8/2022 | Unknown |
| IDEA 247, Inc. | UCC | 09/21/2023 | $215,050.99 |
| Headway Capital, LLC[2] | No filing | No filing | $95,732.92 |
| Department of Treasury | Federal Tax Lien (Wake) | 12/11/2024 | $85,519.13 |
| Department of Treasury | Federal Tax Lien (Harnett) | 12/11/2024 | $85,525.13 |

---

[2] Headway Capital, LLC, does not appear to have perfected a lien but is listed here out of an abundance of caution.

| Department of Treasury | Federal Tax Lien (Wake) | 02/24/2025 | $153,165.14 |

5. The asserted liens of Secured Parties may be perfected with respect to the Debtor's inventory, accounts receivables, payment intangibles, payment card receipts, general intangibles, and proceeds thereof (the "Collateral") and such Collateral may constitute "cash collateral" as that term is defined by § 363. Upon information and belief, no other person or entity has or claims an interest in the Collateral.

6. The Debtor reserves for itself, the Bankruptcy Administrator, any official committee of unsecured creditors subsequently constituted, any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, or any other party in interest, any and all rights to challenge, avoid, object to, set aside, or subordinate any claims, liens, security interests, or rights of setoff against the Collateral or the proceeds thereof.

## REQUEST FOR RELIEF

7. Section 363(c) provides that the Debtor may use cash collateral provided "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the terms of" Section 363. The term "cash collateral" for purposes of Section 363 includes "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ." 11 U.S.C. § 363(a).

8. Debtor seeks a preliminary order allowing the use of cash collateral in the ordinary course of business until a final hearing is held, consistent with the 30-day interim cash collateral budget attached as **Exhibit A**.

9. The Debtor has on hand, as of March 25, 2025, the sum of $22,782.19. Upon information and belief, these funds are part of the Collateral.

10. If authorized, the use of cash collateral will provide the Debtor with adequate capital to operate for a sufficient amount of time to reorganize its debt.

11. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "sound business purpose" that justifies such action. *See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1225-26 (5th Cir. 1986); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (judicial approval under § 363(b) requires a showing that the proposed action is fair and equitable, in good faith and supported by a good business reason).

12. The business judgment rule is a "policy of judicial restraint born of the recognition that directors are, in most cases, more qualified to make business decisions than are judges." *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n.20 (11th Cir. 1989); *see F.D.I.C. v. Castetter*, 184 F.3d 1040, 1044 (9th Cir. 1999) ("The general purpose of the business judgment rule is to afford directors broad discretion in making corporate decisions and to allow these decisions to be made without judicial second-guessing in hindsight."). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Where a valid business justification exists, the debtor's decision to use property out of the ordinary course of business enjoys a strong presumption that "in making a business decision the . . . corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of*

*Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

13. The Debtor represents that continued operations under Chapter 11 will generate the greatest source of funds for the benefit of its creditors and that a Chapter 7 liquidation would result in substantially discounted returns which would impair the interests of not only secured creditors but general unsecured creditors as well.

14. If the use of cash collateral is not immediately approved, the estate will suffer immediate and irreparable harm, as it will not be able to pay employees, repair and maintain equipment, maintain its operations, or pay ordinary business expenses. The Debtor will be forced to close its restaurants, resulting in a liquidation of its assets and significant impairment of the return to creditors.

15. Rule 4002(b)(2) reads as follows:

> (2) Hearing. The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such fourteen (14) days period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

16. Pursuant to Rule 4001, the Debtor respectfully requests a preliminary hearing authorizing it to use cash collateral as specified in this Motion.

17. Debtor proposes that the Secured Parties should be allowed, as adequate protection for the Debtor's use of cash collateral, a post-petition replacement lien and security interest on the same assets to which their liens attached pre-petition, to the same extent and amounts and with the same validity and priority as existed on the Petition Date.

18. The Debtor will maintain one or more "debtor-in-possession" ("DIP") accounts into which it will deposit all cash, check, and other cash items. The Debtor will segregate and account separately for the cash collateral in its possession, custody, or control.

19. Any payment of post-petition fees to a professional are subject to usual notice and court approval procedures.

20. The Debtor will provide the Secured Creditors and the Bankruptcy Administrator a report no less frequently than every thirty (days) showing all income and expenditures and a comparison of actual income and expenses versus the attached budget.

21. A proposed Order substantially in the form attached hereto as **Exhibit B** granting interim relief, followed by a final hearing at some future date as set by the Court, will not prejudice the rights of the Secured Parties as (i) the Secured Parties will maintain their existing liens on all existing and replacement collateral as set forth herein, and (ii) the use of the cash collateral will preserve the value of the estate for the benefit of the Secured Parties and all other creditors.

22. The Debtor asserts that the terms, conditions, and limitations of the proposed Interim Order are reasonably tailored to protect the interests of all creditors of the estate.

23. The Debtor seeks authority to use the cash collateral through and including (i) the effective date of a confirmed plan of reorganization, (ii) sale of substantially all assets of the estate, (iii) conversion of the case to another chapter, or (iv) dismissal of the case, whichever first occurs.

24. The Debtor proposes that in the event the Secured Parties, or any of them, has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished, or seeks adequate protection in addition to that provided

herein, then said creditor may, upon no less than three (3) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the committee of unsecured creditors (or if no such committee has been appointed, the 20 largest unsecured creditors), and (iv) the Bankruptcy Administrator, seek an order from this Court restraining such payments or usage as not being in conformity with this Motion, or seek an order terminating further use of cash collateral.

25. While the Debtor seeks the consent of the Secured Parties to the use of cash collateral as set forth herein, in the absence of such consent the Debtor prays the Court to authorize such use and to provide adequate protection to the Secured Parties to the extent the use of cash collateral impairs such parties' interests, in a manner and to the extent to be determined by the Court.

WHEREFORE, the Debtor prays the Court as follows:

1. For a preliminary hearing on this Motion in order to avoid immediate harm to the estate;

2. For an interim Order authorizing the Debtor to use cash collateral in accordance with 11 U.S.C. § 363, in the form substantially as attached hereto as Exhibit B;

3. For leave of Court to pay necessary expenses utilizing current cash collateral generated by the above-described operations;

4. That the Court's Interim Order become effective immediately upon its entry and be valid and binding on all parties in interest;

5. That the Court schedule a final hearing on this motion and any responses thereto and allow the use of cash collateral on a final basis; and

6. That the Court allow such other and further relief as to it seems just and proper.

Respectfully submitted this the 25th day of March, 2025.

**NARRON WENZEL, P.A.**

By: */s/ David F. Mills*
    David F. Mills
    State Bar No. 18326

    P.O. Box 1567
    102 S. Third Street
    Smithfield, NC 27577
    Tele: (919) 934-0049
    Fax: (919) 938-1058
    dmills@narronwenzel.com

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:
**TINY FROG, INC.,**                                  Case No. 25-01081-5-JNC
                                                      Chapter 11
    **Debtor**

**FIRST INTERIM ORDER AUTHORIZING DEBTOR'S**
**USE OF CASH COLLATERAL**

THIS CAUSE came on for hearing before the Court on March ___, 2025, upon the Debtor's Emergency Motion for Authorization to Use Cash Collateral (the "Motion") filed on March 25, 2025. It appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and should be approved. It further appears to the Court that the Notice of the Motion that the Debtor provided to parties in interest is adequate and proper. Based on the Motion, the arguments of counsel, and the record, the Court makes the following FINDINGS OF FACT and CONCLUSIONS OF LAW:

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

3. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on March 25, 2025 (the "Petition Date"), and currently operates as Debtor-in-Possession ("DIP").

4. The Debtor is a corporation organized and existing under the laws of North Carolina. It operates seven (7) fast food restaurants under the name "Hwy 55 Burgers Shakes & Fries" with locations in Wake, Johnston, Harnett, Moore, and Lee Counties, North Carolina. The Debtor is a franchisee of The Little Mint, Inc., which is itself a debtor in that case pending in this District at Case No. 24-04510-5-JNC.

5. The Debtor currently anticipates a continuation of operations by way of this reorganization. The Debtor's only source of income is through its continued restaurant operations. In order to maintain existing operations, pay necessary salaries and wages, and maximize the return to creditors as a result of its reorganization, the Debtor will be required to incur certain expenses, including labor, supplies, product, insurance, utilities, maintenance, repair, and other expenses associated with reorganizing a restaurant operation. The Debtor contends that a liquidation will not result in a meaningful return, if any, to holders of general unsecured claims.

6. Prior to the Petition Date filing, the Debtor was indebted to various creditors who possibly hold liens against the Debtor's cash, accounts, and revenue, including, but not limited to, the following (collectively, the "Secured Parties"):

| SECURED PARTY | PERFECTION | PERFECTION DATE | AMOUNT |
|---|---|---|---|
| The Bancorp Bank/SBA | UCC | 1/26/2018 | $61,011.22 |

| First Federal Bank | UCC (Knightdale) | 7/16/2018 | $904,283.36 |
|---|---|---|---|
| Business Expansion Funding | UCC | 4/8/2020 | $165,871.64 |
| Timepayment Corp | UCC | 06/8/2022 | Unknown |
| IDEA 247, Inc. | UCC | 09/21/2023 | $215,050.99 |
| Headway Capital, LLC | No filing | No filing | $95,732.92 |
| Department of Treasury | Federal Tax Lien (Wake) | 12/11/2024 | $85,519.13 |
| Department of Treasury | Federal Tax Lien (Harnett) | 12/11/2024 | $85,525.13 |
| Department of Treasury | Federal Tax Lien (Wake) | 02/24/2025 | $153,165.14 |

7. The Debtor represents that continued operations under Chapter 11 will generate the greatest source of funds for the benefit of its creditors and that a Chapter 7 liquidation would result in substantially discounted returns which would impair the interests of not only secured creditors but general unsecured creditors as well.

8. If the use of cash collateral is not immediately approved, the estate will suffer immediate and irreparable harm, as it will not be able to pay employees, repair and maintain equipment, maintain its operations, or pay ordinary business expenses. The Debtor will be forced to close its restaurants and cease operations.

9. Pursuant to Rule 4001, the Debtor requested a preliminary hearing authorizing it to use cash collateral as specified in the Motion.

10. The terms set forth herein provide adequate protection of the interests of the Secured Parties as required by § 363.

NOW, THEREFORE, the Debtor's interim use of cash collateral is ALLOWED, and IT IS ORDERED as follows:

1. The Secured Parties' liens on the collateral securing their indebtedness shall extend to the Debtor's post-petition assets to the extent and amount that they are secured as of

the Petition Date; provided, however, that nothing in this Interim Order shall be deemed to grant any of the Secured Parties a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien.  The post-petition liens and security interests provided for herein shall survive the term of this Interim Order to the extent the prepetition liens were filed, perfected, enforceable and non-avoidable as of the Petition Date.  The Debtor does not waive, and expressly reserves for itself and the bankruptcy estate the right to challenge the validity and priority of the pre-petition liens of the Secured Parties and, derivatively, the post-petition liens provided for hereunder.

2. The replacement liens granted to the Secured Parties pursuant to this Interim Order shall be subject to and subordinate to a carve-out for the payment of allowed professional fees and expenses incurred by Court approved professionals.  So long as the Debtor has the right to use cash collateral pursuant to this Interim Order, professionals of the Debtor may be paid from cash collateral pursuant to procedures approved by the Court.  To the extent such professional fees are approved by the Court and paid pursuant to this Interim Order, they shall be free and clear of the liens of the Secured Parties and the interests of the estate.

3. The Debtor is authorized to use cash collateral for its post-petition, necessary and reasonable operating expenses in accordance with the budget attached as Exhibit A and subject to the terms of this Interim Order.  Any expenditure in excess of 10% of any budgeted line item will require prior written consent of the Secured Parties or Court approval before being paid.

4. The Debtor shall deposit all cash, checks, and other cash items received from the operation of the business encumbered by the asserted liens in favor of the Secured Parties into its DIP operating bank account.  The Debtor shall make disbursements for items designated

in the budget from such account. The Debtor shall segregate its cash collateral and non-cash collateral income, if any.

5. Upon reasonable request and notice, the Debtor shall provide to the Secured Parties all such information as they may reasonably request for the purpose of evaluating their collateral, if any, and the Debtor's compliance with this Interim Order.

6. These obligations of the Debtor are continuing in nature, shall survive the term of this Interim Order, and shall remain in effect until the earlier of (a) the effective date of any confirmed plan; (b) entry of an order terminating this Interim Order; (c) a sale of substantially all assets of the estate, (d) conversion of the case to another chapter; or (e) dismissal of this case.

7. This Interim Order shall become effective immediately upon its entry and be valid and binding on all parties in interest.

8. It shall be a default hereunder if the Debtor fails to comply with any of the terms and conditions of this Interim Order; or fail to file a Plan in accordance with orders of this Court.

9. The Debtor shall not dispose of any asset out of the ordinary course of business without approval of the Court.

10. The Debtor shall serve notice of this Interim Order on all parties entitled to receive such notice pursuant to Bankruptcy Rules 1007 and 4001.

11. Any party may object to the Debtor's continued use of cash collateral by filing a written response with the Clerk of the Bankruptcy Court no later than _____, 2025, at 5 p.m. If no objections are filed, the Court may approve a further interim cash collateral order and operating budget without a hearing.

12. A final hearing on this matter shall be heard at the United States Bankruptcy

Court in _____, North Carolina, on _____, 2025, at _____ a.m./p.m.

**END OF DOCUMENT**