**SO ORDERED.**

**SIGNED this 8 day of April, 2025.**



_____
Joseph N. Callaway
United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| IN RE: | |
| TINY FROG, INC., | Case No. 25-01081-5-JNC |
| | Chapter 11 |
| Debtor | |

**FIRST INTERIM ORDER AUTHORIZING DEBTOR'S
USE OF CASH COLLATERAL**

THIS CAUSE came on for hearing before the Court on March 31, 2025, upon the Debtor's Emergency Motion for Authorization to Use Cash Collateral (the "Motion") filed on March 25, 2025. It appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and should be approved. The Bankruptcy Administrator was represented by Kirstin Gardner, who indicated that she had no objection to the Debtor's Motion. It further appears to the Court that the Notice of the Motion that the Debtor provided to parties in interest is adequate and proper. Based on the Motion, the arguments of counsel, and the record, the Court makes the following FINDINGS OF FACT and CONCLUSIONS OF LAW:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

3. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on March 25, 2025 (the "Petition Date"), and currently operates as Debtor-in-Possession ("DIP").

4. The Debtor is a corporation organized and existing under the laws of North Carolina. It operates seven (7) fast food restaurants under the name "Hwy 55 Burgers Shakes & Fries" with locations in Wake, Johnston, Harnett, and Lee Counties, North Carolina. The Debtor is a franchisee of The Little Mint, Inc., which is itself a debtor in that case pending in this District at Case No. 24-04510-5-JNC.

5. The Debtor currently anticipates a continuation of operations by way of this reorganization. The Debtor's only source of income is through its continued restaurant operations. In order to maintain existing operations, pay necessary salaries and wages, and maximize the return to creditors as a result of its reorganization, the Debtor will be required to incur certain expenses, including labor, supplies, product, insurance, utilities, maintenance, repair, and other expenses associated with reorganizing a restaurant operation. The Debtor contends that a liquidation will not result in a meaningful return, if any, to holders of general unsecured claims.

6. Prior to the Petition Date filing, the Debtor was indebted to various creditors who possibly hold liens against the Debtor's cash, accounts, and revenue, including, but not limited to, the following (collectively, the "Secured Parties"):

| SECURED PARTY | PERFECTION | PERFECTION DATE | AMOUNT |
|---|---|---|---|
| The Bancorp Bank/SBA | UCC | 1/26/2018 | $61,011.22 |
| First Federal Bank | UCC (Knightdale) | 7/16/2018 | $904,283.36 |
| Business Expansion Funding | UCC | 4/8/2020 | $165,871.64 |
| Timepayment Corp | UCC | 06/8/2022 | Unknown |
| IDEA 247, Inc. | UCC | 09/21/2023 | $215,050.99 |
| Headway Capital, LLC | No filing | No filing | $95,732.92 |
| Department of Treasury | Federal Tax Lien (Wake) | 12/11/2024 | $85,519.13 |
| Department of Treasury | Federal Tax Lien (Harnett) | 12/11/2024 | $85,525.13 |
| Department of Treasury | Federal Tax Lien (Wake) | 02/24/2025 | $153,165.14 |

7. The Debtor represents that continued operations under Chapter 11 will generate the greatest source of funds for the benefit of its creditors and that a Chapter 7 liquidation would result in substantially discounted returns which would impair the interests of not only secured creditors but general unsecured creditors as well.

8. If the use of cash collateral is not immediately approved, the estate will suffer immediate and irreparable harm, as it will not be able to pay employees, repair and maintain equipment, maintain its operations, or pay ordinary business expenses. The Debtor will be forced to close its restaurants and cease operations.

9. Pursuant to Rule 4001, the Debtor requested a preliminary hearing authorizing it to use cash collateral as specified in the Motion.

10. The terms set forth herein provide adequate protection of the interests of the Secured Parties as required by § 363.

NOW, THEREFORE, the Debtor's interim use of cash collateral is ALLOWED, and IT IS ORDERED as follows:

1. The Secured Parties' liens on the collateral securing their indebtedness shall extend to the Debtor's post-petition assets to the extent and amount that they are secured as of the Petition Date; provided, however, that nothing in this Interim Order shall be deemed to grant any of the Secured Parties a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien. The post-petition liens and security interests provided for herein shall survive the term of this Interim Order to the extent the prepetition liens were filed, perfected, enforceable and non-avoidable as of the Petition Date. The Debtor does not waive, and expressly reserves for itself and the bankruptcy estate the right to challenge the validity and priority of the pre-petition liens of the Secured Parties and, derivatively, the post-petition liens provided for hereunder.

2. The Debtor is authorized to use cash collateral for its post-petition, necessary and reasonable operating expenses in accordance with the budget attached as Exhibit A and subject to the terms of this Interim Order; provided, this Order does not authorize payment to Sysco for any prepetition balance without further Order of this Court, nor does this Order authorize payment of any charitable contributions.

3. The Debtor shall not pay "management bonuses" pursuant to this Interim Order, but the Debtor's request may be allowed by the next Interim Order if no objection is

timely made.

    4.      Any expenditure in excess of 10% of any budgeted line item will require prior written consent of the Secured Parties or Court approval before being paid.

    5.      The Debtor shall deposit all cash, checks, and other cash items received from the operation of the business encumbered by the asserted liens in favor of the Secured Parties into its DIP operating bank account. The Debtor shall make disbursements for items designated in the budget from such account. The Debtor shall segregate its cash collateral and non-cash collateral income, if any.

    6.      Upon reasonable request and notice, the Debtor shall provide to the Secured Parties all such information as they may reasonably request for the purpose of evaluating their collateral, if any, and the Debtor's compliance with this Interim Order and shall provide the Bankruptcy Administrator and the Secured Parties, not less frequently than every 30 days, an actual versus budget comparison of income and expenditures for the previous 30-day period.

    7.      These obligations of the Debtor are continuing in nature, shall survive the term of this Interim Order, and shall remain in effect until the earlier of (a) the effective date of any confirmed plan; (b) entry of an order terminating this Interim Order; (c) a sale of substantially all assets of the estate, (d) conversion of the case to another chapter; or (e) dismissal of this case.

    8.      This Interim Order shall become effective immediately upon its entry and be valid and binding on all parties in interest.

    9.      It shall be a default hereunder if the Debtor fails to comply with any of the terms and conditions of this Interim Order or fail to file a Plan in accordance with orders of this Court.

    10.      The Debtor shall not dispose of any asset out of the ordinary course of business without approval of the Court.

    11.      The Debtor shall serve notice of this Interim Order on all parties entitled to receive such notice pursuant to Bankruptcy Rules 1007 and 4001.

    12.      Any party may object to the Debtor's continued use of cash collateral by filing **a written response with the Clerk of the Bankruptcy Court no later than April 14, 2025, at 5 p.m.** If no objections are filed, the Court may approve a further interim cash collateral order and operating budget without a hearing.

    **13.**      **A final hearing on this matter, if necessary, shall be heard at the United**

States Bankruptcy Court, 150 Reade Circle, Greenville, North Carolina, on April 15, 2025, at 11 a.m.

**END OF DOCUMENT**

**EXHIBIT A**

| Income | # Tiny Frog, Inc. Total | # Sanford | # Spout Springs | # Dunn | # Knightdale | # Lillington | # McGee's | # Clayton |
|---|---|---|---|---|---|---|---|---|
| Net Sales | 859,408.77 | 124,517.00 | 87,935.14 | 134,145.76 | 67,939.98 | 140,574.76 | 148,305.45 | 155,990.68 |
| Total Income | 859,408.77 | 124,517.00 | 87,935.14 | 134,145.76 | 67,939.98 | 140,574.76 | 148,305.45 | 155,990.68 |
| Cost Of Goods Sold | | | | | | | | |
| Sysco | | | | | | | | |
| Food/Paper/Pepsi Bread (Sysco) | 283,604.89 | 41,090.61 | 29,018.60 | 44,268.10 | 22,420.19 | 46,389.67 | 48,940.80 | 51,476.92 |
| Total Cost of Goods Sold | 283,604.89 | 41,090.61 | 29,018.60 | 44,268.10 | 22,420.19 | 46,389.67 | 48,940.80 | 51,476.92 |
| Gross Profit | 575,803.88 | 83,426.39 | 58,916.54 | 89,877.66 | 45,519.79 | 94,185.09 | 99,364.65 | 104,513.76 |
| Expenses | | | | | | | | |
| Salaries and Wages | | | | | | | | |
| Administrative Salaries | 10,000.00 | | | | | | | |
| Salaries Managers | 37,749.98 | 5,000.00 | 5,250.00 | 5,000.00 | 6,249.99 | 5,000.00 | 5,000.00 | 6,249.99 |
| Salaries Hourly Employees | 150,831.33 | 18,638.91 | 14,975.08 | 25,853.52 | 10,293.51 | 22,332.19 | 29,110.25 | 29,627.87 |
| Management Bonuses | 6,750.00 | 0.00 | 1,000.00 | 1,350.00 | 0.00 | 1,400.00 | 1,500.00 | 1,500.00 |
| Total Salaries & Wages | 205,331.31 | 23,638.91 | 21,225.08 | 32,203.52 | 16,543.50 | 28,732.19 | 35,610.25 | 37,377.86 |
| Payroll Taxes | 20,574.20 | 2,368.62 | 2,126.75 | 3,226.79 | 1,657.66 | 2,878.97 | 3,568.15 | 3,745.26 |
| Advertising | 1,000.00 | 142.85 | 142.85 | 142.85 | 142.85 | 142.85 | 142.85 | 142.85 |
| Bank Fees | 642.95 | 91.85 | 91.85 | 91.85 | 91.85 | 91.85 | 91.85 | 91.85 |
| Phone/ Internet | 839.92 | 164.97 | 129.98 | 84.98 | 200.05 | 84.98 | 89.98 | 84.98 |
| Landscaping | 3,000.00 | 600.00 | 0.00 | 600.00 | 0.00 | 600.00 | 600.00 | 600.00 |
| Fees | | | | | | | | |
| DoorDash Fees 30% of DD | 32,227.83 | 4,669.39 | 3,297.57 | 5,030.47 | 2,547.75 | 5,271.55 | 5,561.45 | 5,849.65 |
| Credit Card Fees | 10,713.68 | 1,456.85 | 1,266.27 | 1,569.51 | 794.90 | 1,644.72 | 1,735.17 | 2,246.27 |
| Toast POS Fees | 1,050.00 | 896.00 | 325.55 | 976.00 | 187.00 | 591.00 | 1,001.00 | 886.00 |
| Insurance | | | | | | | | |
| General Liability | 3,226.00 | 460.85 | 460.85 | 460.85 | 460.85 | 460.85 | 460.85 | 460.85 |
| Worker's Compensation | 1,474.58 | 210.65 | 210.65 | 210.65 | 210.65 | 210.65 | 210.65 | 210.65 |
| Management Benefit Insurance | 4,000.00 | | | | | | | |
| Total Insurance Expense | 8,700.58 | | | | | | | |
| Janitorial Expense | 1,925.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 |
| Linen Expense | 1,822.62 | 423.64 | 159.18 | 200.94 | 117.36 | 309.80 | 280.50 | 331.20 |
| Music Expense | 294.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 |
| Office | | | | | | | | |
| Office Supplies | 1,999.97 | 285.71 | 285.71 | 285.71 | 285.71 | 285.71 | 285.71 | 285.71 |
| Office Rent | 450.00 | | | | | | | |
| Over/ Under Expense | 400.00 | 57.14 | 57.14 | 57.14 | 57.14 | 57.14 | 57.14 | 57.14 |
| Professional Fees | | | | | | | | |
| Bookeeping Expense | 5,384.96 | 769.28 | 769.28 | 769.28 | 769.28 | 769.28 | 769.28 | 769.28 |
| Payroll Expense | 2,085.83 | 325.00 | 325.00 | 325.00 | 325.00 | 325.00 | 325.00 | 325.00 |
| Rent Expense | 78,515.13 | 13,208.33 | 4,750.00 | 14,208.33 | 5,503.27 | 13,470.20 | 13,666.67 | 13,708.33 |
| Repairs and Maintenance | | | | | | | | |
| Auto Allowance | 3,083.34 | | | | | | | |
| Gas Allowance | 500.00 | | | | | | | |
| Travel | 100.00 | | | | | | | |
| Charitable Contributions | 800.00 | | | | | | | |
| Repairs General/ Equipment | 2,000.00 | 285.71 | 285.71 | 285.71 | 285.71 | 285.71 | 285.71 | 285.71 |
| Repairs and Maintenance FSI | 2,050.44 | 325.28 | 172.00 | 325.28 | 233.11 | 349.36 | 315.55 | 329.86 |
| Royalty Fees | **68,752.70** | 9,961.36 | 7,034.81 | 10,731.66 | 5,435.20 | 11,245.98 | 11,864.44 | 12,479.25 |
| Alarm expense | 609.29 | 94.14 | 61.09 | 94.14 | 77.50 | 94.14 | 94.14 | 94.14 |
| Property Taxes Lease Item | 1,575.66 | 1,008.52 | 0.00 | 1,649.81 | 0.00 | 2,150.02 | 1,031.15 | 780.10 |
| Property Taxes | 1,575.66 | 101.62 | 7.83 | 184.97 | 46.00 | 126.23 | 77.86 | 1,031.15 |
| Utilities | 21,287.96 | 3,249.61 | 2,860.10 | 3,269.95 | 2,733.75 | 3,473.63 | 3,009.25 | 2,691.67 |
| Uniform Expense | 1,050.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Waste/Trash | 3,374.58 | 549.41 | 577.45 | 605.10 | 0.00 | 445.11 | 676.67 | 520.84 |
| Total Expenses | 492,418.19 | 65,812.69 | 47,089.70 | 78,057.48 | 39,173.08 | 74,563.92 | 82,278.27 | 85,852.60 |
| Net Operation Income | 83,385.69 | 17,613.70 | 11,826.85 | 11,820.17 | 6,346.70 | 19,621.16 | 17,086.38 | 18,661.15 |