**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

TINY FROG, INC.                    **CASE NO: 25-001081-5-JNC**
                                   **CHAPTER 11**
                DEBTOR.

## FIRST AMENDED PLAN OF REORGANIZATION

**DATED:  October 28, 2025.**

Pursuant to the provisions of 11 U.S.C. §§ 1123 and 1127(a), the Debtor-in-Possession, Tiny Frog, Inc., a North Carolina corporation, hereby submits the following First Amended Plan of Reorganization prior to the Confirmation Hearing to be held on October 28, 2025:

## ARTICLE I:  SUMMARY OF THE PLAN

The Debtor is an operator of several quick service restaurants in Harnett, Johnston, and Lee Counties, North Carolina.  The Debtor is a North Carolina corporation and operates as "Highway 55 Shakes Burgers & Fries" pursuant to franchise agreements with The Little Mint, Inc., a North Carolina corporation.

The Debtor experienced financial troubles resulting from inflationary input costs and expansion costs when changing its business model from strip centers to free standing restaurants with drive-thru windows.  The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2025, has closed a restaurant located in Wake County, and intends to reorganize the remaining facilities and continue operations.

The Debtor's primary assets consist of furnishings and restaurant equipment utilized in the restaurant operations.  The Debtor owns no real estate, and much of its equipment and furnishings appears to be rented.

The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts, improve cash flow, and continue operations.  Continued operations will generate the greatest source of funds for the benefit of creditors.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court.  The specific amounts and terms of payment will be made according to the treatment of each respective creditor as set forth herein.

All creditors and equity security holders should refer to Articles III and IV of this Plan for information regarding the precise treatment of their claims.  A Disclosure Statement that

provides more information regarding this Plan and the rights of creditors and equity security holders is being circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II: DEFINITIONS

1.       "ALLOWED CLAIMS" shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 as to which no objection to the allowance thereof has been interposed, or as to which any such objection has been determined by an order which is no longer subject to appeal and as to which no appeal is pending. Allowed Claims also include all claims listed by the Debtor in its schedules but not identified as disputed, contingent, or unliquidated. Allowed Claims shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

2.       "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article IV of the Plan.

3.       "CODE" shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* and any amendments thereof.

4.       "CONFIRMATION DATE" shall mean the date of entry by the Court of a Confirmation Order at or after a Confirmation Hearing.

5.       "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

6.       "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

7.       "COUNSEL" or "ATTORNEY" shall mean David F. Mills of Narron Wenzel, P.A., who shall at all times, unless properly withdrawn or removed from this case, represent the interests of the Debtor with respect to this Chapter 11 case.

8.       "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in this Chapter 11 case.

9.       "CREDITOR(S)" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10.       "DEBTOR" shall mean TINY FROG, INC., a North Carolina corporation.

11.       "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with 11 U.S.C. § 1125, as supplemented or amended from time to time, and approved by the Bankruptcy Court.

12.    "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtors, or proof of which has been filed with the Bankruptcy Court, and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a final order.

For the avoidance of doubt, if no proof of Claim has been filed by the applicable deadline and the Claim is not listed on the Schedules or has been or hereafter is listed on the Schedules as $0.00, disputed, contingent, or unliquidated, such Claim shall be disallowed and shall be disregarded for all purposes.

13.    "EFFECTIVE DATE" shall mean the date that is fifteen (15) days after entry of the Confirmation Order, assuming the order has become final and non-appealable.

14.    "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

15.    "PETITION DATE" means the date on which the Chapter 11 petition was filed: March 25, 2025, and sometimes referred to as the "Filing Date."

16.    "PLAN" shall mean this Chapter 11 Plan in its present form or as it may be modified, amended or supplemented.

## ARTICLE III:  TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

a.    **Administrative Claims.**  This class consists of claims for any cost or expense of administration pursuant to §§ 503, 506, and 507 of the Code.  This includes the claims for compensation of the following professionals, which will be paid subject to Court approval:

| Claimant | Title | Amount |
|---|---|---|
| David F. Mills, P.A. | Counsel for Debtor | TBD |
| Dale Harris, CPA | CPA | TBD |
| Country Boys Auction | Auctioneer/Appraiser | $3,000.00 |

Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan or as agreed between the Debtor and the holder of such allowed administrative expense claim.  Fees and expenses owed to brokers and auctioneers will be paid from the proceeds of the sale of the related assets.

EXCEPT FOR COURT APPROVED PROFESSIONALS AND TAXES INCURRED BY THE ESTATE, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN SIXTY (60) DAYS OF ENTRY OF THE CONFIRMATION ORDER.

b.      **Priority Tax Claims.**  The Debtor proposes to pay these claims in full as provided below over a period not exceeding five years from the Order for Relief.  These claims shall include interest at the Tax Rate (which is 7.0 % *per annum* as of July 1, 2025, for federal and North Carolina taxes, and 9.0% for local *ad valorem* taxes).  The Debtor may elect to pay these claims in full and in cash at any time following the Effective Date.  Notwithstanding the foregoing, the holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.  Any Claim or demand for such penalty will be subject to treatment as an unsecured claim under Class XXVIII to the extent allowed.

All allowed *ad valorem* tax claims are classified separately in Article IV, Class II of this Plan.

The Priority Tax Claim about which the Debtor is aware is:

| Claimant: | Amount of Claim: | Treatment: |
|---|---|---|
| Internal Revenue Service ("IRS")—Claim No. 21 | $389,491.36 | Paid in equal quarterly installments beginning on April 1, 2026, and continuing on the first day of each quarter thereafter with the last payment due on January 1, 2030.<br><br>The anticipated quarterly payment for feasibility purposes shall be $23,304.35 per quarter, or $7,730.27 per month. |
| NC Department of Revenue—Claim No. 34 | $106,119.26[1] | Paid in equal quarterly installments beginning on April 1, 2026, and continuing on the first day of each quarter thereafter with the last payment due on January 1, 2030.<br><br>The anticipated quarterly payment for feasibility purposes shall be $6,349.40 per quarter, or $2106.15 per month. |
| NC Department of Revenue—Claim No. 35 | $402,520.20 | Paid in equal quarterly installments beginning on April 1, 2026, and continuing on the first day of each quarter thereafter with the last payment due on January 1, 2025.<br><br>The anticipated quarterly payment for feasibility purposes shall be $24,083.91 per quarter, or $7,988.85 per month. |

---

[1] The amount of Claims 34 and 35 are disputed; Debtor believes the actual amount to be substantially less; treatment is subject to final determination of claim.

**Additional Provisions:** The Debtor shall remain current on its post-petition tax filings and tax deposits. Failure to remain current on post-petition tax filings, tax deposits, or to make payments as required by the Plan shall be a default and the taxing authority shall be permitted to exercise any and all of its collection rights and remedies under federal law without further order of the Court. All statutes of limitation on the collection of any priority taxes are suspended pursuant to I.R.C. § 6503(h)(2) while the Plan is in effect and for six months thereafter.

The stay and injunction imposed by this Plan is modified to the extent that the IRS or NCDOR may receive, consider, and act upon any offer in compromise submitted by the Debtor without further orders of the Court to the extent otherwise allowed by law.

In accordance with § 1123(a)(1), Administrative Claims and priority Tax Claims have not been classified. All allowed *ad valorem* tax claims are classified separately in Article IV, Class II of this Plan.

## ARTICLE IV: CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

For the purposes of this Plan, claims against the Debtor are classified in accordance with 11 U.S.C. § 1122(a).

**A.    Class I – Priority Non-Tax Claims.** Holders of Allowed Claims in Class I shall receive distributions from available funds prior to distributions to general unsecured creditors in Class XXVIII. Debtor does not believe there are any claims in this Class.

**B.    Class II – Ad Valorem Taxes.**

(1)    Classification. Class II consists of claims, if any, for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the Debtor's real or personal property based upon the value of the property assessed. The claims in this Class include the following:

| | |
|---|---|
| Harnett County Tax Collector (Claim 1) | $1,514.74 |
| Lee County Tax Collector (Claim 23) | $2,538.29 |
| Johnston County Tax Collector (Claim 25) | $1,601.25 |

(2)    Impairment. This class will be unimpaired.

(3)    Treatment. Allowed Claims in this Class shall be paid in full with interest on or before the later of the Effective Date or the last day on which the tax is payable without penalty.

**C.    Class III – The Bancorp Bank ("Bancorp") (Claim 31)**

**(1)    Classification.** Bancorp's claim in the amount of $59,896.18 is secured by liens on substantially all of the Debtor's business personal property.

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**  Bancorp's claim shall be treated as a fully secured obligation in the amount of $59,896.18, plus post-petition interest at the non-default contract rate and allowed § 506(b) expenses, less post-petition payments.  The claim will be treated as current. The Debtor will resume regular monthly payments beginning with the first day of the first full month following the Effective Date and continue on the same day of each month thereafter until paid in full.

### D.     Class IV -- First Federal Bank ("FFB") (Claim 4)

(1)     **Classification.**  FFB filed a claim (Claim No. 4) in the amount of $214,220.02 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Benson/McGee's Crossroads location (the "Class 4 Collateral").  FFB perfected its security interests in the Class 4 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 4 Collateral does not exceed $70,650.00.

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**  FFB's claim will be treated as a secured claim in the amount of $86,013.00, which will be amortized with interest at 5.75% per annum and repaid in sixty (60) monthly installments of $1,653.71 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class XXVIII.

### E.     Class V – First Federal Bank ("FFB") (Claim 5)

(1)     **Classification.**  FFB filed a claim (Claim No. 5) in the amount of $182,747.66 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Dunn location (the "Class 5 Collateral").  FFB perfected its security interests in the Class 5 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 5 Collateral does not exceed $61,298.00.

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**  FFB's claim will be treated as a secured claim in the amount of $74,627.54, which will be amortized with interest at 5.75% per annum and repaid in sixty (60) monthly installments of $1,434.81 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class XXVIII.

F.      **Class VI – First Federal Bank ("FFB") (Claim 6)**

(1)      **Classification.**  FFB filed a claim (Claim No. 6) in the amount of $58,743.94 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Clayton location (the "Class 6 Collateral").  FFB perfected its security interests in the Class 6 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 6 Collateral does not exceed $45,585.00.

(2)      **Impairment.**  This class is impaired.

(3)      **Treatment.**  FFB's claim will be treated as a secured claim in the amount of $55,497.48, which will be amortized with interest at 5.75% per annum and repaid in sixty (60) monthly installments of $1,067.01 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class XXVIII.

G.      **Class VII – First Federal Bank ("FFB") (Claim 7)**

(1)      **Classification.**  FFB filed a claim (Claim No. 7) in the amount of $164,441.08 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Lillington location (the "Class 7 Collateral").  FFB perfected its security interests in the Class 7 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 7 Collateral does not exceed $62,610.00**.**

(2)      **Impairment.**  This class is impaired.

(3)      **Treatment.**  FFB's claim will be treated as a secured claim in the amount of $76,224.83, which will be amortized with interest at 5.75% per annum and repaid in sixty (60) monthly installments of $1,465.52 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class XXVIII.

H.      **Class VIII – First Federal Bank ("FFB") (Claim 8)**

(1)      **Classification.**  FFB filed a claim (Claim No. 8) in the amount of $248,639.40.  Claim 8 is secured by liens on substantially all of the Debtor's equipment and furnishings located at its Sanford location (the "Class 8 Collateral").  FFB perfected its security interests in the Class 8 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 8 Collateral does not exceed $69,525.00**.**

(2)      **Impairment.**  This class is impaired.

(3)    **Treatment.**  FFB's claim will be treated as a secured claim in the amount of $84,643.52, which will be amortized with interest at 5.75% per annum and repaid in sixty (60) monthly installments of $1,627.38 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class XXVIII.

I.    **Class IX – First Federal Bank ("FFB") (Claim 9)**

(1)    **Classification.**  FFB filed a claim (Claim No. 9) in the amount of $20,370.54.  Claim 9 is secured by liens on substantially all of the Debtor's business assets (the "Class 9 Collateral").  FFB perfected its security interests in the Class 9 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 9 Collateral does not exceed $24,110.00.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  FFB's claim will be treated as a fully secured claim in the amount of $20,370.54, which will be amortized with interest at 5.75% per annum and repaid in forty-eight (48) monthly installments of $476.83 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.

J.    **Class X – Alliance Funding Group ("AFG") (Claim 10).**

(1)    **Classification.**  AFG filed a claim (Claim No. 10) in the amount of $20,607.32 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage and stainless steel hoods at the Benson/McGee's Crossroads location.  The value of the collateral is *de minimis.*

(2)    **Impairment.**    This class is impaired.

(3)    **Treatment.**    This obligation shall be treated as an allowed secured claim in the amount of $1,875.00, plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $161.45 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

K.    **Class XI – Alliance Funding Group ("AFG") (Claim 11).**

(1)    **Classification.**  AFG filed a claim (Claim No. 11) in the amount of $43,999.40 related to an installment sales contract that purports to be a lease of certain business personal property consisting of HVAC equipment at the Lillington location.  The value of the collateral is *de minimis.*

(2)    **Impairment.**   This class is impaired.

(3)    **Treatment.**   This obligation shall be treated as an allowed secured claim in the amount of $12,500.00 plus post-petition interest, less post-petition payments. The secured claim will be amortized over a period of twenty-four (24) months with interest at 6.0%. The Debtor will make monthly payments in the amount of $554.48 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full. The balance of the claim will be treated as a general unsecured claim.

**L.    Class XII – Alliance Funding Group ("AFG") (Claim 12).**

(1)    **Classification.**   AFG filed a claim (Claim No. 12) in the amount of $34,181.24 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage at the Dunn location. The value of the collateral is *de minimis.*

(2)    **Impairment.**   This class is impaired.

(3)    **Treatment.**   This obligation shall be treated as an allowed secured claim in the amount of $1,250.00 plus post-petition interest, less post-petition payments. The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%. The Debtor will make monthly payments in the amount of $107.63 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full. The balance of the claim will be treated as a general unsecured claim.

**M.    Class XIII – Alliance Funding Group ("AFG") (Claim 13).**

(1)    **Classification.**   AFG filed a claim (Claim No. 13) in the amount of $28,519.03 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage for the Clayton location and signage manufactured for a proposed location in Zebulon, which never opened. The signage for the Zebulon location was never delivered. The value of the collateral is zero.

(2)    **Impairment.**   This class is impaired.

(3)    **Treatment.**   This claim will be disallowed as a secured claim and treated as a general unsecured claim.

**N.    Class XIV – Alliance Funding Group ("AFG") (Claim 14).**

(1)    **Classification.**   AFG filed a claim (Claim No. 14) in the amount of $38,065.29 related to an installment sales contract that purports to be a lease of certain business personal property consisting of a refrigerated storage unit and walk in storage unit at the Sanford location. The value of the collateral is *de minimis.*

(2)    **Impairment.**    This class is impaired.

(3)    **Treatment.**    This obligation shall be treated as an allowed secured claim in the amount of $3,750.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $322.89 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

O.    **Class XV – Alliance Funding Group ("AFG") (Claim 15).**

(1)    **Classification.**    AFG filed a claim (Claim No. 15) in the amount of $50,789.86 related to an installment sales contract that purports to be a lease of certain business personal property consisting of drive-thru, order boards, audio-visual equipment and related equipment, griddles, fryers, warming bins, and various equipment at various locations.  The value of the collateral is *de minimis.*

(2)    **Impairment.**    This class is impaired.

(3)    **Treatment.**    This obligation shall be treated as an allowed secured claim in the amount of $12,500.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twenty-four (24) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $554.48 beginning the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

P.    **Class XVI – Alliance Funding Group ("AFG") (Claim 16).**

(1)    **Classification.**    AFG filed a claim (Claim No. 16) in the amount of $80,994.89 related to an installment sales contract that purports to be a lease of certain business personal property consisting of freezers, griddles, and other restaurant equipment at the Dunn location.  The value of the collateral is *de minimis.*

(2)    **Impairment.**    This class is impaired.

(3)    **Treatment.**    This obligation shall be treated as an allowed secured claim in the amount of $23,750.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twenty-four (24) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $1,053.51 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**Q.       Class XVII – Alliance Funding Group ("AFG") (Claim 17).**

(1)     **Classification.**   AFG filed a claim (Claim No. 17) in the amount of $24,960.21 related to an installment sales contract that purports to be a lease of certain business personal property consisting of drive-thru, order boards, and audio-visual equipment at the Sanford location.   The value of the collateral is *de minimis.*

(2)     **Impairment.**    This class is impaired.

(3)     **Treatment.**   This obligation shall be treated as an allowed secured claim in the amount of $2,500.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $215.26 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**R.       Class XVIII – Alliance Funding Group ("AFG") (Claim 18).**

(1)     **Classification.**   AFG filed a claim (Claim No. 18) in the amount of $22,329.48 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage at the Clayton location.  The value of the collateral is *de minimis.*

(2)     **Impairment.**    This class is impaired.

(3)     **Treatment.**   This obligation shall be treated as an allowed secured claim in the amount of $1,250.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $107.63 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**S.       Class XIX -- Alliance Funding Group ("AFG") (Claim 19).**

(1)     **Classification.**   AFG filed a claim (Claim No. 19) in the amount of $30,702.66 related to an installment sales contract that purports to be a lease of certain business personal property consisting of drive-thru and audio-visual equipment at the Dunn location.  The value of the collateral is *de minimis.*

(2)     **Impairment.**    This class is impaired.

(3)     **Treatment.**   This obligation shall be treated as an allowed secured claim in the amount of $1,875.00.00, plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $161.45 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month

thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**T.**     **Class XX – IDEA 247, Inc. ("Idea") (Claim 20).**

**(1)     Classification.**  Idea filed a claim (Claim No. 20) as a secured claim in the amount of $204,901.87.  The claim is unsecured pursuant to § 506(a).

**(2)     Impairment.**    This class is impaired.

**(3)     Treatment.**   This claim will be disallowed as a secured claim and treated as a general unsecured claim.

**U.**     **Class XXI – Pawnee Leasing Corporation ("Pawnee") (Claim 22).**

**(1)     Classification.**  Pawnee filed a claim (Claim No. 22) as a secured claim in the amount of $44,395.05.   The claim is unsecured pursuant to § 506(a).

**(2)     Impairment.**    This class is impaired.

**(3)     Treatment.**   This claim will be disallowed as a secured claim and treated as a general unsecured claim.

**V.**     **Class XXII – TimePayment Corporation ("TPC") (Claims 2 and 3).**

**(1)     Classification.**  TPC filed a claim (Claim No. 2) in the unsecured amount of $6,779.40 and a claim (Claim No. 3) in the secured amount of $135,518.97.  The claims purport to be secured by liens on certain of the Debtor's restaurant equipment and furnishings.  The claims are unsecured pursuant to § 506(a).

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**   These claims will be disallowed as secured claims and treated as general unsecured claims.

**W.**     **Class XXIII – Mitsubishi HC Capital America, Inc. ("Mitsubishi") (Claim 29).**

**(1)     Classification.**  Mitsubishi filed a claim (Claim No. 29) in the secured amount of $85,000.00 and unsecured amount of $104,976.52.  The claim purports to be secured by lien on certain restaurant equipment at the Clayton location.

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**   This obligation shall be treated as a secured claim in the amount of $60,000.00 plus post-petition interest, less post-petition payments.  The secured claim

will be amortized over a period of sixty (60) months with interest at 7.25%.  The Debtor will make monthly payments in the amount of $1,198.02 beginning on the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be disallowed as a secured claim and treated as a general unsecured claim.

### X.    Class XXIV – Internal Revenue Service ("IRS") (Claim 21)

(1)    **Classification**.  The IRS filed a claim (Claim 21) in the amount of $455,244.30, of which the amount of $390,691.80 purports to be a priority claim and the balance a general unsecured claim.  The IRS recorded a Notice of Federal Tax Lien in Harnett County on December 11, 2024 (24M000294-420) in the amount of $85,525.13.  The value of any property to which the federal tax lien may attach pursuant to 26 U.S.C. § 6321 is fully subsumed by senior position liens.

In addition, the IRS recorded a Notice of Federal Tax Lien in Wake County on February 24, 2025 (25M000563-910) in the amount of $153,165.14.  The Debtor has no property in Wake County to which the lien may attach.

(2)    **Impairment**.    This Class will be impaired.

(3)    **Treatment**.  The federal tax liens in favor of the IRS shall be deemed unsecured pursuant to § 506(a).

### Y.    Class XXV – Little Mint, Inc. (Claim 28)

(1)    **Classification.**  Little Mint, Inc., is franchisor under seven (7) franchise agreements with the Debtor and filed a claim for prepetition default in payment of royalties.  The Debtor rejected one of the agreements relating to a Knightdale location but intends to, and hereby does, assume the remaining six (6) franchise agreements.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  The Debtor will cure the default in the amount of $51,808.97 by making sixty (60) equal monthly payments to Little Mint, Inc., in the amount of $863.48, beginning October 1, 2025, and continuing on the first day of each month thereafter until paid in full.  Such payments will be in addition to post-petition royalties that come due in the ordinary course of business.

### Z.    Class XXVI – American Commerce Bank ("ACB") (Claim 32)

(1)    **Classification.**  ACB filed a secured claim in the amount of $63,257.13 which purports to be based on a lease of restaurant equipment.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  This obligation shall be treated as a lease assumed by the Debtor as modified herein.  The lease will be modified to extend the term to thirty-six (36) remaining months, with monthly payments in the amount of $1,757.14, beginning September 1, 2025.

AA.    **Class XXVII – Ascentium Capital ("Ascentium") (Claim 26)**

(1)    **Classification.**  Ascentium filed a claim in the amount of $7,439.44 which purports to be secured by a lien on the Debtor's TOAST point-of-sale equipment and software.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  This obligation shall be treated as a fully secured obligation and will be amortized over a period of thirty-six months with interest at 8.5%.  The Debtor will make monthly payments in the amount of $235.27 beginning on September 1, 2025, continuing on the same day of each month thereafter until paid in full.

BB.    **Class XXVIII – General Unsecured Claims.**

(1)    **Classification.**  This class consists of all allowed, undisputed, non-contingent, liquidated unsecured claims, including undersecured portions of claims filed as secured.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  The Debtor will pay the sum of $175,000.00 to holders of claims in this Class over a five (5) year period in quarterly installments, resulting in a dividend of approximately ten percent (10%).  The quarterly installments in the amount of $8,750.00 each will begin January 1, 2026, and continue on the first day of each calendar quarter thereafter for a total of twenty (20) quarterly installments. The installments will be distributed to holders of claims in this Class on a pro rata basis.

CC.    **Class XXIV - Equity Security Holder.**

(1)    **Classification.**  This class consists of Alexis Ramos.

(2)    **Impairment.**    This class is impaired.

(3)    **Treatment.**  In exchange for the equity holder retaining his equity ownership of the Debtor, Mr. Ramos proposes a public bid in the amount of $5,000.00, which shall be understood as a "new value" contribution in the event the absolute priority rule is invoked by an objecting unsecured creditor.

## ARTICLE V:  MEANS OF IMPLEMENTATION AND EXECUTION

A.      The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of this Plan and the Bankruptcy Code.  The Debtor shall take such other action as is necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

B.      All funds necessary for the implementation of this Plan shall be obtained from continued operations of the six remaining locations and collection of claims available to the Debtor, whether under Chapter 5 of the Code or otherwise.

C.      Except as expressly stated in the Plan or allowed by a final order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Bankruptcy Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a final order of the Court.

D.      All objections to claims, fee applications and adversary proceedings will be filed with the Court within ninety (90) days of the Effective Date.

E.      <u>Sales Free and Clear of Liens</u>.  Any real or personal property owned by the Debtor that will be sold pursuant to this Plan will be sold **free and clear of all liens, encumbrances, claims, interests, or other obligations without the necessity of further Court Order**.  Though not required by this Plan, in order to expedite the sale process, provide clear title to the real properties sold, or to provide reasonable comfort or accommodation to the purchaser(s) or title insurance companies, the Debtor may elect to seek the entry of a separate Order providing for the sale of such property free and clear of all liens, with liens to attach to the proceeds.

F.      <u>Cancellation of Liens</u>.  In the event the treatment provided for the claim of a secured creditor in Article IV results in such creditor being treated as wholly unsecured, such creditor shall cancel its deed of trust, security instrument, or other evidence of security interest, within thirty (30) days of the Effective Date.  In the event of non-compliance by the creditor, the Debtor proposes that the Confirmation Order contain a provision directly cancelling the specified lien.

G.      <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.  All transactions avoided or otherwise set aside pursuant to 11 U.S.C. §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law.  Funds received from such transactions shall be distributed to Creditors according to the priorities of the Bankruptcy Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall not remain on the public record nor shall it remain an encumbrance upon the property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be distributed to Creditors in accordance with the provisions of this Plan.

H.    <u>Exemption from Transfer Taxes</u>.  Pursuant to § 1146(a), any transfers made pursuant to the Confirmed Plan shall not be subject to any stamp tax or similar tax.

## ARTICLE VI:  PROVISIONS CONCERNING DISTRIBUTIONS

A.    <u>Delivery of Distributions in General</u>. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.    <u>Distribution Dates</u>. It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date unless otherwise stated herein.

## ARTICLE VII:  REJECTION OF EXECUTORY CONTRACTS

Except as specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected except as indicated below; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The following executory contracts and unexpired leases are assumed or rejected as indicated.

| | |
|---|---|
| The Little Mint, Inc. (Six franchise agreements) | Assume |
| American Commerce Bank, N.A. | Assume as modified herein |
| Ascentium Capital—TOAST POS Equipment Lease | Assume as modified herein |
| Daniel J. Gerber (Benson commercial real estate lease) | Assume |
| Ed Swope (Lillington real estate lease) | Assume |
| Egypt Crossing, LLC (Spout Springs real estate lease) | Assume |
| Lexi Gray Property Mgmt. (Sanford real estate lease) | Assume |
| Lexi Gray Property Mgmt. (Clayton real estate lease) | Assume |
| Chinyeh Hostler Rev. Trust (Dunn real estate lease) | Assume |
| Rise Alliance—contract to negotiate debt reduction | Reject |
| Knightdale Crossing, LLC (Knightdale real estate lease) | Reject as provided by prior order |

## ARTICLE VIII:  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.      <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.      <u>Claimants Entitled to Vote.</u>  Holders of impaired claims shall be entitled to vote if:

(1)      Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)      Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)      Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)      Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.      <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.      <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class

member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

   F. <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any Class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Article IX herein for confirmation pursuant to the "cramdown" provisions of §1129(b) of  the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any Class that votes against the Plan consistent with § 1129(b)(2)(A).

## ARTICLE IX:  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

   In respect to any Class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

   1. <u>Vesting</u>.  All assets of the Debtor shall vest in the Debtor upon confirmation.

   2. <u>Injunction</u>. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to 11 U.S.C. § 1141, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; provided, however, that each holder of a contested claim or interest may continue to prosecute its proof of claim in accordance with the Plan and all holders of claims and interests shall be entitled to enforce their rights under the Plan.  This injunction shall not affect any creditor's ability to enforce rights against a non-debtor or non-debtor property**.**

3.     <u>Waiver and Release</u>. Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtor, but not co-obligors, which release is supported by the requirements of this Plan and covenants contained herein.

4.     <u>Retention of Claims</u>.  The Confirmation Order shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of this Court, including without limitation all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Plan.  Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

5.     <u>Binding Effect</u>.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date the provisions of the Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns and be binding upon any holder of a claim against the Debtor or its property, and such holder's respective successors and assigns, whether or not the claim is an Allowed Claim, whether or not the claim is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

## ARTICLE XI:  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, *inter alia*:

1. to determine any and all objections to the allowance of claims and/or interests;

2. to determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

3. to determine any and all applications pending on the Confirmation Date  for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.  to determine all controversies and disputes arising under or in connection with the Plan;

5.  to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.  to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.  to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.  to determine all disputes regarding property of the estate;

9. to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11. to replace the Debtor-in-Possession with a Trustee for good cause shown.

## ARTICLE XII:   MISCELLANEOUS PROVISIONS

A. Survival of Terms. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. Successors Bound. This Plan shall on the Effective Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C. Controlling Law. This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the Bankruptcy Code and the Bankruptcy Rules.  The laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, to the extent consistent with the Bankruptcy Code and Bankruptcy Rules.

D. Further Assurance. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E. Defects or Omissions.   After Confirmation, the proponent of the Plan may, with approval of the Court, remedy any defect or omission or reconcile any inconsistencies in the Plan, Disclosure Statement, or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan, Disclosure Statement, or Confirmation Order, so long as the such remedy does not materially or adversely affect the interests of creditors and other parties in interest.

F. Limitations on Notice.  Following the Effective Date of the Plan, the Debtor shall no longer be required to serve or otherwise provide notice of any motions, applications, or other pleadings filed in this case on any creditor or claimant which has been paid in full and thus are no longer claimants, or who are not affected adversely by such motion, application, or pleading, without the need for the Debtor to take any further action as to this matter.

This the 28th day of October, 2025.

**NARRON WENZEL, P.A.**

By: _/s/ David F. Mills_
David F. Mills
State Bar No. 18326

P.O. Box 1567
102 S. Third Street
Smithfield, NC 27577
Tele:  (919) 934-0049
Fax:  (919) 938-1058
dmills@narronwenzel.com
_Counsel for the Debtor_

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

TINY FROG, INC.                    CASE NO: 25-001081-5-JNC
                                   CHAPTER 11

      DEBTOR.

**FIRST AMENDED PLAN OF REORGANIZATION**

DATED: ~~August 21~~October 28, 2025.

    Pursuant to the provisions of 11 U.S.C. ~~§§~~ §§ 1123~~,~~ and 1127(a), the Debtor-in-Possession, Tiny Frog, Inc., a North Carolina corporation, hereby submits the following First Amended Plan of Reorganization prior to the Confirmation Hearing to be held on October 28, 2025:

**ARTICLE I:  SUMMARY OF THE PLAN**

    The Debtor is an operator of several quick service restaurants in Harnett, Johnston, and Lee Counties, North Carolina.  The Debtor is a North Carolina corporation and operates as "Highway 55 Shakes Burgers & Fries" pursuant to franchise agreements with The Little Mint, Inc., a North Carolina corporation.

    The Debtor experienced financial troubles resulting from inflationary input costs and expansion costs when changing its business model from strip centers to free standing restaurants with drive-thru windows.  The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2025, has closed a restaurant located in Wake County, and intends to reorganize the remaining facilities and continue operations.

    The Debtor's primary assets consist of furnishings and restaurant equipment utilized in the restaurant operations.  The Debtor owns no real estate, and much of its equipment and furnishings appears to be rented.

    The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts, improve cash flow, and continue operations.  Continued operations will generate the greatest source of funds for the benefit of creditors.

    The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court.  The specific amounts and terms of payment will be made according to the treatment of each respective creditor as set forth herein.

    All creditors and equity security holders should refer to Articles III and IV of this Plan for information regarding the precise treatment of their claims.  A Disclosure Statement that

provides more information regarding this Plan and the rights of creditors and equity security holders is being circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II: DEFINITIONS

1.      "ALLOWED CLAIMS" shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 as to which no objection to the allowance thereof has been interposed, or as to which any such objection has been determined by an order which is no longer subject to appeal and as to which no appeal is pending. Allowed Claims also include all claims listed by the Debtor in its schedules but not identified as disputed, contingent, or unliquidated. Allowed Claims shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

2.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article IV of the Plan.

3.      "CODE" shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* and any amendments thereof.

4.      "CONFIRMATION DATE" shall mean the date of entry by the Court of a Confirmation Order at or after a Confirmation Hearing.

5.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

6.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

7.      "COUNSEL" or "ATTORNEY" shall mean David F. Mills of Narron Wenzel, P.A., who shall at all times, unless properly withdrawn or removed from this case, represent the interests of the Debtor with respect to this Chapter 11 case.

8.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in this Chapter 11 case.

9.      "CREDITOR(S)" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10.     "DEBTOR" shall mean TINY FROG, INC., a North Carolina corporation.

11.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with 11 U.S.C. § 1125, as supplemented or amended from time to time, and approved by the Bankruptcy Court.

12.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtors, or proof of which has been filed with the Bankruptcy Court, and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a final order.

For the avoidance of doubt, if no proof of Claim has been filed by the applicable deadline and the Claim is not listed on the Schedules or has been or hereafter is listed on the Schedules as $0.00, disputed, contingent, or unliquidated, such Claim shall be disallowed and shall be disregarded for all purposes.

13.     "EFFECTIVE DATE" shall mean the date that is fifteen (15) days after entry of the Confirmation Order, assuming the order has become final and non-appealable.

14.     "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

15.     "PETITION DATE" means the date on which the Chapter 11 petition was filed: March 25, 2025, and sometimes referred to as the "Filing Date."

16.     "PLAN" shall mean this Chapter 11 Plan in its present form or as it may be modified, amended or supplemented.

## ARTICLE III:  TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

a.     **Administrative Claims.**  This class consists of claims for any cost or expense of administration pursuant to §§ 503, 506, and 507 of the Code.  This includes the claims for compensation of the following professionals, which will be paid subject to Court approval:

| Claimant | Title | Amount |
|---|---|---|
| David F. Mills, P.A. | Counsel for Debtor | TBD |
| Dale Harris, CPA | CPA | TBD |
| Country Boys Auction | Auctioneer/Appraiser | $3,000.00 |

Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan or as agreed between the Debtor and the holder of such allowed administrative expense claim.  Fees and expenses owed to brokers and auctioneers will be paid from the proceeds of the sale of the related assets.

EXCEPT FOR COURT APPROVED PROFESSIONALS AND TAXES INCURRED BY THE ESTATE, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN SIXTY (60) DAYS OF ENTRY OF THE CONFIRMATION ORDER.

b.    **Priority Tax Claims.**  The Debtor proposes to pay these claims in full as provided below over a period not exceeding five years from the Order for Relief.  These claims shall include interest at the Tax Rate (which is 7.0 % *per annum* as of July 1, 2025, for federal and North Carolina taxes, and 9.0% for local *ad valorem* taxes).  The Debtor may elect to pay these claims in full and in cash at any time following the Effective Date.  Notwithstanding the foregoing, the holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.  Any Claim or demand for such penalty will be subject to treatment as an unsecured claim under ~~Classes XXV and XXVI~~Class XXVIII to the extent allowed.

All allowed *ad valorem* tax claims are classified separately in Article IV, Class II of this Plan.

The Priority Tax Claim about which the Debtor is ~~are~~ aware is:

| Claimant: | Amount of Claim: | Treatment: |
|---|---|---|
| Internal Revenue Service ("IRS")—Claim No. 21 | $389,491.36 | Paid in equal quarterly installments beginning on April 1, 2026, and continuing on the first day of each quarter thereafter with the last payment due on January 1, ~~2032~~2030.<br><br>The anticipated quarterly payment for feasibility purposes shall be $23,304.35 per quarter, or $7,730.27 per month. |
| NC Department of Revenue—Claim No. 34 | $106,119.26[1] | Paid in equal quarterly installments beginning on April 1, 2026, and continuing on the first day of each quarter thereafter with the last payment due on January 1, ~~2032~~2030.<br><br>The anticipated quarterly payment for feasibility purposes shall be $6,349.40 per quarter, or $2106.15 per month. |
| NC Department of Revenue—Claim No. 35 | $402,520.20 | Paid in equal quarterly installments beginning on April 1, 2026, and continuing on the first day of each quarter thereafter with the last payment due on January 1, ~~2032~~2025.<br><br>The anticipated quarterly payment for feasibility purposes shall be $24,083.91 per quarter, or $7,988.85 per month. |

---

[1] The amount of Claims 34 and 35 are disputed; Debtor believes the actual amount to be substantially less; treatment is subject to final determination of claim.

**Additional Provisions:** The Debtor shall remain current on its post-petition tax filings and tax deposits. Failure to remain current on post-petition tax filings, tax deposits, or to make payments as required by the Plan shall be a default and the taxing authority shall be permitted to exercise any and all of its collection rights and remedies under federal law without further order of the Court. All statutes of limitation on the collection of any priority taxes ~~is~~are suspended pursuant to I.R.C. § 6503(h)(2) while the Plan is in effect and for six months thereafter.

The stay and injunction imposed by this Plan is modified to the extent that the IRS or NCDOR may receive, consider, and act upon any offer in compromise submitted by the Debtor without further orders of the Court to the extent otherwise allowed by law.

In accordance with § 1123(a)(1), Administrative Claims and priority Tax Claims have not been classified. All allowed *ad valorem* tax claims are classified separately in Article IV, Class II of this Plan.

### ARTICLE IV:  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

For the purposes of this Plan, claims against the Debtor are classified in accordance with 11 U.S.C. § 1122(a).

**A.**    **Class I – Priority Non-Tax Claims.**  Holders of Allowed Claims in Class I shall receive distributions from available funds prior to distributions to general unsecured creditors in Class ~~XXV~~XXVIII.  Debtor does not believe there are any claims in this Class.

**B.**    **Class II – Ad Valorem Taxes.**

(1)    Classification.  Class II consists of claims, if any, for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the Debtor's real or personal property based upon the value of the property assessed.  The claims in this Class include the following:

| Harnett County Tax Collector (Claim 1) | $1,514.74 |
| Lee County Tax Collector (Claim 23) | $2,538.29 |
| Johnston County Tax Collector (Claim 25) | $1,601.25 |

(2)    Impairment.    This class will be unimpaired.

(3)    Treatment.  Allowed Claims in this Class shall be paid in full with interest on or before the later of the Effective Date or the last day on which the tax is payable without penalty.

**C.**    **Class III – The Bancorp Bank ("Bancorp") (Claim 31)**

(1)    **Classification.**  Bancorp's claim in the amount of $59,896.18 is secured by liens on substantially all of the Debtor's business personal property.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  Bancorp's claim shall be treated as a fully secured obligation in the amount of $59,896.18, plus post-petition interest at the non-default contract rate and allowed § 506(b) expenses, less post-petition payments.  The claim will be treated as current. The Debtor will resume regular monthly payments beginning with the first day of the first full month following the Effective Date and continue on the same day of each month thereafter until paid in full.

D.    **Class IV -- First Federal Bank ("FFB") (Claim 4)**

(1)    **Classification.**  FFB filed a claim (Claim No. 4) in the amount of $214,220.02 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Benson/McGee's Crossroads location (the "Class 4 Collateral").  FFB perfected its security interests in the Class 4 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 4 Collateral does not exceed $~~47,100~~70,650.00.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  FFB's claim ~~shall~~will be treated as ~~an allowed~~a secured claim in ~~an~~the amount ~~equal to $47,100~~of $86,013.00, ~~plus any post-petition interest, less post-petition payments.  The secured claim~~ which will be amortized ~~over a period of three (3) years~~ with interest at ~~8.5%.  The Debtor will make.~~75% per annum and repaid in sixty (60) monthly ~~payments in the amount~~installments of $1,~~489.41~~653.71 beginning on the first day of ~~September, 2025~~the first full month following the Effective Date, continuing on the same day of each month thereafter until ~~1 August 2028, at which time all outstanding principal and interest will be due and payable~~paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class ~~XXV~~XXVIII.

E.    **Class V – First Federal Bank ("FFB") (Claim 5)**

(1)    **Classification.**  FFB filed a claim (Claim No. 5) in the amount of $182,747.66 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Dunn location (the "Class 5 Collateral").  FFB perfected its security interests in the Class 5 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 5 Collateral does not exceed $~~40,865~~61,298.00.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  FFB's claim ~~shall~~will be treated as ~~an allowed~~a secured claim in ~~an amount equal to $40,865.00, plus any post-petition interest, less post-petition payments.  The secured claim~~the amount of $74,627.54, which will be amortized ~~over a period of three (3) years~~with interest at ~~8.5%.  The Debtor will make.~~75% per annum and repaid in

sixty (60) monthly ~~payments in the amount~~installments of $1,~~292.24~~434.81 beginning on the first day of ~~September, 2025~~the first full month following the Effective Date, continuing on the same day of each month thereafter until ~~1 August 2028, at which time all outstanding principal and interest will be due and payable~~paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class ~~XXV.~~XXVIII.

### F.    Class VI – First Federal Bank ("FFB") (Claim 6)

(1)    **Classification.**  FFB filed a claim (Claim No. 6) in the amount of $58,743.94 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Clayton location (the "Class 6 Collateral").  FFB perfected its security interests in the Class 6 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 6 Collateral does not exceed $45,585.00.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  FFB's claim ~~shall~~will be treated as ~~an allowed~~a secured claim in ~~an amount equal to $45,585.00, plus any post-petition interest, less post-petition payments.  The secured claim~~the amount of $55,497.48, which will be amortized ~~over a period of three (3) years~~with interest at ~~8.5%.  The Debtor will make~~.75% per annum and repaid in sixty (60) monthly ~~payments in the amount~~installments of $1,~~441.50~~067.01 beginning on the first day of ~~September 2025~~the first full month following the Effective Date, continuing on the same day of each month thereafter until ~~1 August 2028, at which time all outstanding principal and interest will be due and payable~~paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class ~~XXV~~XXVIII.

### G.    Class VII – First Federal Bank ("FFB") (Claim 7)

(1)    **Classification.**  FFB filed a claim (Claim No. 7) in the amount of $164,441.08 secured by liens on substantially all of the Debtor's equipment and furnishings located at its Lillington location (the "Class 7 Collateral").  FFB perfected its security interests in the Class 7 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 7 Collateral does not exceed $~~41,740~~62,610.00**.**

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  FFB's claim ~~shall~~will be treated as ~~an allowed~~a secured claim in ~~an amount equal to $41,740.00, plus any post-petition interest, less post-petition payments.  The secured claim~~the amount of $76,224.83, which will be amortized ~~over a period of three (3) years~~with interest at ~~8.5%.  The Debtor will make~~.75% per annum and repaid in sixty (60) monthly ~~payments in the amount~~installments of $1,~~319.91~~465.52 beginning on the

first day of ~~September 2025~~the first full month following the Effective Date, continuing on the same day of each month thereafter until ~~1 August 2028, at which time all outstanding principal and interest will be due and payable~~paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class ~~XXV~~XXVIII.

**H.     Class VIII – First Federal Bank ("FFB") (Claim 8)**

(1)     **Classification.**  FFB filed a claim (Claim No. 8) in the amount of $248,639.40.  Claim 8 is secured by liens on substantially all of the Debtor's equipment and furnishings located at its Sanford location (the "Class 8 Collateral").  FFB perfected its security interests in the Class 8 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 8 Collateral does not exceed $~~46,350~~69,525.00**.**

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**  FFB's claim ~~shall~~will be treated as ~~an allowed~~a secured claim in ~~an amount equal to $46,350.00, plus any post-petition interest, less post-petition payments.  The secured claim ~~the amount of $84,643.52, which will be amortized ~~over a period of three (3) years~~with interest at ~~8.5%.  The Debtor will make ~~75% per annum and repaid in sixty (60) monthly ~~payments in the amount~~installments of $1,~~465.69~~627.38 beginning on the first day of ~~September 2025~~the first full month following the Effective Date, continuing on the same day of each month thereafter until ~~1 August 2028, at which time all outstanding principal and interest will be due and payable~~paid in full.

The balance of the Claim will be treated as a general unsecured claim under Class ~~XXV~~XXVIII.

**I.     Class IX – First Federal Bank ("FFB") (Claim 9)**

(1)     **Classification.**  FFB filed a claim (Claim No. 9) in the amount of $20,370.54.  Claim 9 is secured by liens on substantially all of the Debtor's business assets (the "Class 9 Collateral").  FFB perfected its security interests in the Class 9 Collateral by filing UCC-1 financing statements with the North Carolina Secretary of State.  The value of the Class 9 Collateral does not exceed $24,110.00.

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**  FFB's claim ~~shall~~will be treated as ~~an allowed~~a fully secured claim in the amount of $20,370.54 ~~plus any post-petition interest less post-petition payments.  The secured claim ~~, which will be amortized ~~over a period of three (3) years ~~with interest at ~~8.5%.  The Debtor will make ~~75% per annum and repaid in forty-eight (48) monthly ~~payments in the amount~~installments of $~~644.18~~476.83 beginning on the first day of ~~September 2025~~the first full month following the Effective Date, continuing on the same day of each month thereafter

until ~~1 August 2028, at which time all outstanding principal and interest will be due and payable~~paid in full.

**J.     Class X – Alliance Funding Group ("AFG") (Claim 10).**

**(1)     Classification.**  AFG filed a claim (Claim No. 10) in the amount of $20,607.32 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage and stainless steel hoods at the Benson/McGee's Crossroads location.  The value of the collateral is *de minimis.*

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $1,~~500~~875.00, plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at ~~8.5~~6.0%.  The Debtor will make monthly payments in the amount of $~~130.91~~161.45 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**K.     Class XI – Alliance Funding Group ("AFG") (Claim 11).**

**(1)     Classification.**  AFG filed a claim (Claim No. 11) in the amount of $43,999.40 related to an installment sales contract that purports to be a lease of certain business personal property consisting of HVAC equipment at the Lillington location.  The value of the collateral is *de minimis.*

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $~~10,000~~12,500.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twenty-four (24) months with interest at ~~8.5~~6.0%.  The Debtor will make monthly payments in the amount of $~~455.10~~554.48 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**L.     Class XII – Alliance Funding Group ("AFG") (Claim 12).**

**(1)     Classification.**  AFG filed a claim (Claim No. 12) in the amount of $34,181.24 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage at the Dunn location.  The value of the collateral is *de minimis.*

**(2)     Impairment.**  This class is impaired.

(3)    **Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $1,~~000~~250.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at 8.5%.  ~~The secured claim will be amortized over a period of twelve (12) months with interest at 8.5%.~~  The Debtor will make monthly payments in the amount of $~~87.27~~107.63 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

M.    **Class XIII – Alliance Funding Group ("AFG") (Claim 13).**

(1)    **Classification.**  AFG filed a claim (Claim No. 13) in the amount of $28,519.03 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage for the Clayton location and signage manufactured for a proposed location in Zebulon, which never opened.  The signage for the Zebulon location was never delivered.  The value of the collateral is zero.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  This claim will be disallowed as a secured claim and treated as a general unsecured claim.

N.    **Class XIV – Alliance Funding Group ("AFG") (Claim 14).**

(1)    **Classification.**  AFG filed a claim (Claim No. 14) in the amount of $38,065.29 related to an installment sales contract that purports to be a lease of certain business personal property consisting of a refrigerated storage unit and walk in storage unit at the Sanford location.  The value of the collateral is *de minimis.*

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $3,~~000~~750.00 plus post-petition interest, less post-petition payments.  ~~The secured claim will be amortized over a period of twelve (12) months with interest at 8.5%.~~  The secured claim will be amortized over a period of twelve (12) months with interest at 6.0%.  The Debtor will make monthly payments in the amount of $~~261.82~~322.89 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

O.    **Class XV – Alliance Funding Group ("AFG") (Claim 15).**

(1)    **Classification.**  AFG filed a claim (Claim No. 15) in the amount of $50,789.86 related to an installment sales contract that purports to be a lease of certain business personal property consisting of drive-thru, order boards, audio-visual equipment and related

equipment, griddles, fryers, warming bins, and various equipment at various locations. The value of the collateral is *de minimis*.

      **(2)**    **Impairment.**   This class is impaired.

      **(3)**    **Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $~~10,000~~12,500.00 plus post-petition interest, less post-petition payments. The secured claim will be amortized over a period of twenty-four (24) months with interest at ~~8.5~~6.0%. The Debtor will make monthly payments in the amount of $~~455.10~~554.48 beginning ~~on 1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full. The balance of the claim will be treated as a general unsecured claim.

   **P.**    **Class XVI – Alliance Funding Group ("AFG") (Claim 16).**

      **(1)**    **Classification.**  AFG filed a claim (Claim No. 16) in the amount of $80,994.89 related to an installment sales contract that purports to be a lease of certain business personal property consisting of freezers, griddles, and other restaurant equipment at the Dunn location. The value of the collateral is *de minimis*.

      **(2)**    **Impairment.**   This class is impaired.

      **(3)**    **Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $~~19,000~~23,750.00 plus post-petition interest, less post-petition payments. The secured claim will be amortized over a period of twenty-four (24) months with interest at ~~8.5~~6.0%. The Debtor will make monthly payments in the amount of $~~864.68~~1,053.51 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full. The balance of the claim will be treated as a general unsecured claim.

   **Q.**    **Class XVII – Alliance Funding Group ("AFG") (Claim 17).**

      **(1)**    **Classification.**  AFG filed a claim (Claim No. 17) in the amount of $24,960.21 related to an installment sales contract that purports to be a lease of certain business personal property consisting of drive-thru, order boards, and audio-visual equipment at the Sanford location. The value of the collateral is *de minimis*.

      **(2)**    **Impairment.**   This class is impaired.

      **(3)**    **Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $2,~~000~~500.00 plus post-petition interest, less post-petition payments. The secured claim will be amortized over a period of twelve (12) months with interest at ~~8.5~~6.0%. The Debtor will make monthly payments in the amount of $~~174.55~~215.26 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on

the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**R.     Class XVIII – Alliance Funding Group ("AFG") (Claim 18).**

**(1)     Classification.**  AFG filed a claim (Claim No. 18) in the amount of $22,329.48 related to an installment sales contract that purports to be a lease of certain business personal property consisting of signage at the Clayton location.  The value of the collateral is *de minimis.*

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $1,~~000~~250.00 plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at ~~8.5~~6.0%.  The Debtor will make monthly payments in the amount of $~~87.27~~107.63 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**S.     Class XIX -- Alliance Funding Group ("AFG") (Claim 19).**

**(1)     Classification.**  AFG filed a claim (Claim No. 19) in the amount of $30,702.66 related to an installment sales contract that purports to be a lease of certain business personal property consisting of drive-thru and audio-visual equipment at the Dunn location.  The value of the collateral is *de minimis.*

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**  This obligation shall be treated as an allowed secured claim in the amount of $1,~~500~~875.00.00, plus post-petition interest, less post-petition payments.  The secured claim will be amortized over a period of twelve (12) months with interest at ~~8.5~~6.0%.  The Debtor will make monthly payments in the amount of $~~130.91~~161.45 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.  The balance of the claim will be treated as a general unsecured claim.

**T.     Class XX – IDEA 247, Inc. ("Idea") (Claim 20).**

**(1)     Classification.**  Idea filed a claim (Claim No. 20) as a secured claim in the amount of $204,901.87.  The claim is unsecured pursuant to § 506(a).

**(2)     Impairment.**  This class is impaired.

**(3)     Treatment.**  This claim will be disallowed as a secured claim and treated as a general unsecured claim.

U.   **Class XXI – Pawnee Leasing Corporation ("Pawnee") (Claim 22).**

(1)   **Classification.**   Pawnee filed a claim (Claim No. 22) as a secured claim in the amount of $44,395.05.   ~~The UCC financing statement filed with the North Carolina Secretary of State fails to describe any collateral.   Further, the~~The claim is unsecured pursuant to § 506(a).

(2)   **Impairment.**   This class is impaired.

(3)   **Treatment.**   This claim will be disallowed as a secured claim and treated as a general unsecured claim.

V.   **Class XXII – TimePayment Corporation ("TPC") (Claims 2 and 3).**

(1)   **Classification.**   TPC filed a claim (Claim No. 2) in the unsecured amount of $6,779.40 and a claim (Claim No. 3) in the secured amount of $135,518.97.   The claims purport to be secured by liens on certain of the Debtor's restaurant equipment and furnishings. The claims are unsecured pursuant to § 506(a).

(2)   **Impairment.**   This class is impaired.

(3)   **Treatment.**   These claims will be disallowed as secured claims and treated as general unsecured claims.

W.   **Class XXIII – Mitsubishi HC Capital America, Inc. ("Mitsubishi") (Claim 29).**

(1)   **Classification.**   Mitsubishi filed a claim (Claim No. 29) in the secured amount of $85,000.00 and unsecured amount of $104,976.52.   The claim purports to be secured by lien on certain ~~grill hood equipment and refrigeration~~restaurant equipment at the Clayton location. ~~The collateral has little or no marketable value due to the cost and difficulty involved in removing the collateral from the premises.~~

(2)   **Impairment.**   This class is impaired.

(3)   **Treatment.**   This obligation shall be treated as a secured ~~obligation~~claim in the amount of $~~10~~60,000.00 plus post-petition interest, less post-petition payments.   The secured claim will be amortized over a period of ~~twenty-four (24~~sixty (60) months with interest at ~~8.5~~7.25%.   The Debtor will make monthly payments in the amount of $~~455.10~~1,198.02 beginning on ~~1 September 2025~~the first day of the first full month following the Effective Date, continuing on the same day of each month thereafter until paid in full.   The balance of the claim will be disallowed as a secured claim and treated as a general unsecured claim.

X.   **Class XXIV – Internal Revenue Service ("IRS") (Claim 21)**

(1)     **Classification**.  The IRS filed a claim (Claim 21) in the amount of $455,244.30, of which the amount of $390,691.80 purports to be a priority claim and the balance a general unsecured claim.  The IRS recorded a Notice of Federal Tax Lien in Harnett County on December 11, 2024 (24M000294-420) in the amount of $85,525.13.  The value of any property to which the federal tax lien may attach pursuant to 26 U.S.C. § 6321 is fully subsumed by senior position liens.

In addition, the IRS recorded a Notice of Federal Tax Lien in Wake County on February 24, 2025 (25M000563-910) in the amount of $153,165.14.  The Debtor has no property in Wake County to which the lien may attach.

(2)     **Impairment**.    This Class will be impaired.

(3)     **Treatment**.  The federal tax liens in favor of the IRS shall be deemed unsecured ~~and,~~ pursuant to ~~Section~~§ 506(~~d), shall be deemed void upon Confirmation.~~a).

**Y.     Class XXV – Little Mint, Inc. (Claim 28)**

(1)     **Classification.**  Little Mint, Inc., is franchisor under seven (7) franchise agreements with the Debtor and filed a claim for prepetition default in payment of royalties.  The Debtor rejected one of the agreements relating to a Knightdale location but intends to, and hereby does, assume the remaining six (6) franchise agreements.

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**   The Debtor will cure the default in the amount of $51,808.97 by making sixty (60) equal monthly payments to Little Mint, Inc., in the amount of $863.48, beginning October 1, 2025, and continuing on the first day of each month thereafter until paid in full.  Such payments will be in addition to post-petition royalties that come due in the ordinary course of business.

**Z.     Class XXVI – American Commerce Bank ("ACB") (Claim 32)**

(1)     **Classification.**  ACB filed a secured claim in the amount of $63,257.13 which purports to be based on a lease of restaurant equipment.  ~~The UCC financing statement, however, fails to describe the collateral for the secured claim.~~

(2)     **Impairment.**  This class is impaired.

(3)     **Treatment.**   This obligation shall be treated as a lease assumed by the Debtor as modified herein.  The lease will be modified to extend the term to thirty-six (36) remaining months, with monthly payments in the amount of $1,757.14, beginning September 1, 2025.

**AA.    Class XXVII – Ascentium Capital ("Ascentium") (Claim 26)**

(1)    **Classification.**  Ascentium filed a ~~secured~~ claim in the amount of $7,439.44 which purports to be secured by a lien on the Debtor's TOAST point-of-sale equipment and software.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  This obligation shall be treated as a fully secured obligation and will be amortized over a period of thirty-six months with interest at 8.5%.  The Debtor will make monthly payments in the amount of $235.27 beginning on September 1, 2025, continuing on the same day of each month thereafter until paid in full.

**BB.    Class XXVIII – General Unsecured Claims.**

(1)    **Classification.**  This class consists of all allowed, undisputed, non-contingent, liquidated unsecured claims, including undersecured portions of claims filed as secured.

(2)    **Impairment.**  This class is impaired.

(3)    **Treatment.**  The Debtor will pay the sum of $175,000.00 to holders of claims in this Class over a five (5) year period in quarterly installments, resulting in a dividend of approximately ten percent (10%).  The quarterly installments in the amount of $8,750.00 each will begin January 1, 2026, and continue on the first day of each calendar quarter thereafter for a total of twenty (20) quarterly installments. The installments will be distributed to holders of claims in this Class on a pro rata basis.

**CC.    Class XXIV - Equity Security Holder.**

(1)    **Classification.**  This class consists of Alexis Ramos.

(2)    **Impairment.**    This class is impaired.

(3)    **Treatment.**  In exchange for the equity holder retaining his equity ownership of the Debtor, Mr. Ramos proposes a public bid in the amount of $5,000.00, which shall be understood as a "new value" contribution in the event the absolute priority rule is invoked by an objecting unsecured creditor.

## ARTICLE V:  MEANS OF IMPLEMENTATION AND EXECUTION

A.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of this Plan and the Bankruptcy Code.  The Debtor shall take such other action as is necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

B.      All funds necessary for the implementation of this Plan shall be obtained from continued operations of the ~~liquidation of assets, recovery of federal farm program payments,~~ six remaining locations and collection of claims available to the Debtor, whether under Chapter 5 of the Code or otherwise. ~~Upon confirmation, the Debtor may use cash collateral as needed to preserve, insure, and maintain appropriate insurance on the real estate without further order.~~

C.      Except as expressly stated in the Plan or allowed by a final order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Bankruptcy Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a final order of the Court.

D.      All objections to claims, fee applications and adversary proceedings will be filed with the Court within ninety (90) days of the Effective Date.

E.      <u>Sales Free and Clear of Liens</u>.  Any real or personal property owned by the Debtor that will be sold pursuant to this Plan will be sold **free and clear of all liens, encumbrances, claims, interests, or other obligations without the necessity of further Court Order**.  Though not required by this Plan, in order to expedite the sale process, provide clear title to the real properties sold, or to provide reasonable comfort or accommodation to the purchaser(s) or title insurance companies, the Debtor may elect to seek the entry of a separate Order providing for the sale of such property free and clear of all liens, with liens to attach to the proceeds.

F.      <u>Cancellation of Liens</u>.  In the event the treatment provided for the claim of a secured creditor in Article IV results in such creditor being treated as wholly unsecured, ~~including the federal tax lien referenced hereinabove,~~ such creditor shall cancel its deed of trust, security instrument, or other evidence of security interest, within thirty (30) days of the Effective Date.  In the event of non-compliance by the creditor, the Debtor proposes that the Confirmation Order contain a provision directly cancelling the specified lien.

G.      <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.  All transactions avoided or otherwise set aside pursuant to 11 U.S.C. §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law. Funds received from such transactions shall be distributed to Creditors according to the priorities of the Bankruptcy Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall not remain on the public record nor shall it remain an encumbrance upon the property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be distributed to Creditors in accordance with the provisions of this Plan.

H.      <u>Exemption from Transfer Taxes</u>.  Pursuant to § 1146(a), any transfers made pursuant to the Confirmed Plan shall not be subject to any stamp tax or similar tax.

### ARTICLE VI:  PROVISIONS CONCERNING DISTRIBUTIONS

A.    <u>Delivery of Distributions in General</u>. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.    <u>Distribution Dates</u>. It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date unless otherwise stated herein.

## ARTICLE VII:  REJECTION OF EXECUTORY CONTRACTS

Except as specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected <u>except as indicated below</u>; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The following executory contracts and unexpired leases are assumed or rejected as indicated.

| | |
|---|---|
| The Little Mint, Inc. (Six franchise agreements) | Assume |
| American Commerce Bank, N.A. | Assume as modified herein |
| Ascentium Capital—TOAST POS Equipment Lease | Assume as modified herein |
| Daniel J. Gerber (Benson commercial real estate lease) | Assume |
| Ed Swope (Lillington real estate lease) | Assume |
| Egypt Crossing, LLC (Spout Springs real estate lease) | Assume |
| Lexi Gray Property Mgmt. (Sanford real estate lease) | Assume |
| Lexi Gray Property Mgmt. (Clayton real estate lease) | Assume |
| Chinyeh Hostler Rev. Trust (Dunn real estate lease) | Assume |
| Rise Alliance—contract to negotiate debt reduction | Reject |
| Knightdale Crossing, LLC (Knightdale real estate lease) | Reject as provided by prior order |

## ARTICLE VIII:  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    <u>Claimants Entitled to Vote.</u>  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)    Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.      <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any Class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in ~~Section~~Article IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any Class that votes against the Plan consistent with ~~section~~§ 1129(b)(2)(A).

## ARTICLE IX:  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any Class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

1.      <u>Vesting</u>.  All assets of the Debtor shall ~~remain vested in the estate until liquidated as provided herein.  In the event of satisfaction of all Claims herein, any assets remaining shall be disbursed to and~~ vest in the ~~Partners according to state law.~~Debtor upon confirmation.

2.      <u>Injunction</u>. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to 11 U.S.C. § 1141, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; provided, however, that each holder of a contested claim or interest may continue to prosecute its proof of claim in accordance with the Plan and all holders of claims and interests shall be entitled to enforce their rights under the Plan.  This injunction shall not affect any creditor's ability to enforce rights against a non-debtor or non-debtor property~~; provided, that this injunction shall extend to Alexis Ramos for a period of three (3) years from the~~

~~Effective Date, during which time any applicable statutes of limitations as to Alexis Ramos will be tolled~~.

      3.    <u>Waiver and Release</u>. Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtor, but not co-obligors, which release is supported by the requirements of this Plan and covenants contained herein.

      4.    <u>Retention of Claims</u>.  The Confirmation Order shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of this Court, including without limitation all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Plan.  Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

      5.    <u>Binding Effect</u>.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date the provisions of the Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns and be binding upon any holder of a claim against the Debtor or its property, and such holder's respective successors and assigns, whether or not the claim is an Allowed Claim, whether or not the claim is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

## ARTICLE XI:  RETENTION OF JURISDICTION

      The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, *inter alia*:

      1. to determine any and all objections to the allowance of claims and/or <u>interests;</u>

      2. to determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

      3. to determine any and all applications pending on the Confirmation Date  for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

      4.  to determine all controversies and disputes arising under or in connection with the Plan;

      5.  to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.  to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.  to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.  to determine all disputes regarding property of the estate;

9. to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11. to replace the Debtor-in-Possession with a Trustee for good cause shown.

## ARTICLE XII:  MISCELLANEOUS PROVISIONS

A. Survival of Terms. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. Successors Bound. This Plan shall on the Effective Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C. Controlling Law. This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the Bankruptcy Code and the Bankruptcy Rules.  The laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, to the extent consistent with the Bankruptcy Code and Bankruptcy Rules.

D. Further Assurance. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E. Defects or Omissions.   After Confirmation, the ~~proponents~~proponent of the Plan may, with approval of the Court, remedy any defect or omission or reconcile any inconsistencies in the Plan, Disclosure Statement, or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan, Disclosure Statement, or Confirmation Order, so long as the such remedy does not materially or adversely affect the interests of creditors and other parties in interest.

F. Limitations on Notice.  Following the Effective Date of the Plan, the Debtor shall no longer be required to serve or otherwise provide notice of any motions, applications, or other

pleadings filed in this case on any creditor or claimant which has been paid in full and thus are no longer claimants, or who are not affected adversely by such motion, application, or pleading, without the need for the Debtor to take any further action as to this matter.

This the ~~21st~~28th day of ~~August~~October, 2025.

**NARRON WENZEL, P.A.**

By: */s/ David F. Mills*
    David F. Mills
    State Bar No. 18326

    P.O. Box 1567
    102 S. Third Street
    Smithfield, NC 27577
    Tele:  (919) 934-0049
    Fax:  (919) 938-1058
    dmills@narronwenzel.com
    *Counsel for the Debtor*